OPINION
Appellant Michelle R. Beil n.k.a. Kontner appeals a judgment of the Licking County Common Pleas Court, Domestic Relations Division, designating appellee Gerald Bridges the residential parent of Jonathan Bridges, the parties' minor child:
ASSIGNMENTS OF ERROR
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW BY DENYING HER ACCESS TO OR USE OF THE TRANSCRIPT OF THE IN CAMERA INTERVIEW WITH THE MINOR CHILD.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF A FAIR HEARING BY ALLOWING AND ACTUALLY ENCOURAGING THE UNAUTHORIZED PRACTICE OF LAW DURING THE HEARING.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY MAKING TEMPORARY ORDERS OF INDEFINITE DURATION.
FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT DENIED APPELLANT DUE PROCESS BY ENTERING JUDGMENT ON THE GUARDIAN AD LITEM FEES WITHOUT NOTICE OF THE OPPORTUNITY TO BE HEARD.
FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO CONSIDER THE DIRECT ADVERSE IMPACT OF APPELLEE'S VIOLENCE DIRECTED AGAINST THE MINOR CHILD.
The parties were never married to one another; however, they are the natural parents of Jonathan Casey Bridges, born July 9, 1991. On April 2, 1993, appellant was designated the residential parent of Jonathan. During Jonathan's life, appellant was involved in at least two abusive relationships with adult males. The first, her marriage to Mr. Kontner, was characterized by numerous arguments escalating into physical violence. The violence was not solely on the part of appellant's husband. In September of 1996, appellant and her husband were driving at high rates of speed. Appellant then intentionally rammed Mr. Kontner's vehicle. When she filed for divorce against Mr. Kontner, appellant indicated that he had been violent to Jonathan as well. In September of 1998, appellant began a romantic relationship with Sherman Brock. Morrow County sheriff's deputies portrayed the relationship as one of convenience and use: appellant would use Mr. Brock for sexual activity and to perform work on her residence, only to discard him at her whim. Mr. Brock suffered from some sort of emotional disorder, and deputies warned appellant not to toy with Mr. Brock's emotions. Appellant disregarded this advice. At the request of appellant, the Morrow County Sheriff's Department dispatched deputies to her residence on twelve occasions during the first five months of 1999 to remove Mr. Brock from her residence. Mr. Brock caused physical damage to the residence on at least one occasion by breaking a window. Deputies also noticed numerous holes in the walls of appellant's home. Appellant claimed that one such hole was caused by her forcefully thrusting her buttocks through the drywall. On one occasion, a deputy took Jonathan into the bathroom of appellant's home and remained with the boy for nearly half an hour while fellow officers attempted to quell a serious verbal altercation between appellant and Mr. Brock. On several of the incidents for which appellant called deputies to remove Mr. Brock from her home, appellant had been drinking. She was convicted of operating a motor vehicle while under the influence of alcohol on August of 1998, and was charged with obstruction of justice in 1999 for allegedly hiding Mr. Brock from Morrow County deputies who were seeking to arrest him. Jonathan suffers from a number of problems which have appreciably impaired his academic performance in school. Appellant failed to cooperate with Jonathan's teachers and school staff concerning his academic problems, but instead blamed the teachers and fellow students for Jonathan's difficulties. On one occasion, appellant sent Mr. Brock on her behalf to meet with one of Jonathan's teachers. Jonathan was suspended during the 1998-99 school year for "flipping off" a secretary in the principal's office at his school. Jonathan was extremely disruptive in class. He tested in the sixth percentile of children his age in reading skills. Appellant had signed no more than two-thirds of his reading papers the reading teacher sent home for her to review. The school psychologist who developed an intervention plan for Jonathan determined that he experiences motor difficulties, problems with perceptual integration, and appears to have a pronounced lack of attention. Appellee, who resides in Chelsea, Michigan, moved for reallocation of parent rights and responsibilities on April 14, 1999. Following a hearing before a magistrate, the magistrate recommended that appellee designated the residential parent of Jonathan. On November 8, 1999, the court entered judgment designating appellee the residential parent of Jonathan.
 I
Appellant argues that the court erred in sealing the transcript of its in camera interview with Jonathan. R.C. 3109.04 (B)(3) provides that no person shall obtain or attempt to obtain from a child written or recorded statement setting forth the child's wishes regarding allocation of parental rights and responsibilities. This statute expresses the legislative intent to prevent all parties from gaining access to the record of an in-chambers interview of a child. Patton v. Patton (January 9, 1995), Licking Appellate No. 94CA40, unreported. The interview is recorded for purposes of protecting the parties, in that an appellate court may review the recorded interview and determine whether undue influence has been exerted, or whether the court made proper findings of fact regarding the in-chambers interview. Id. However, the legislative mandate that no person shall obtain any recorded statement from the child regarding allocation of parental rights and responsibilities clearly minimizes the chilling effect of the in-chambers interview, and provides protection for the minor child to display candor in setting for his or her feelings under the circumstances. Id. The statute conforms with a clear intent of the legislature to protect the best interest of the child. Id. Appellant has not demonstrated that the sealing of the transcript violates her rights to due process, or the Open Courts provision of the Ohio Constitution. The magistrate made a finding of fact concerning the substance of the interview with the child. The magistrate found that in the course of the interview, Jonathan expressed a preference to continue to reside with appellant. Finding of Fact 49. The magistrate found that in light of the evidence admitted during the hearing, the stated preference was a factor of comparatively less weight. Id. However, the magistrate found that Jonathan is clearly concerned for his mother, and does not want to see her hurt. Id. The magistrate's finding of fact accurately and completely set forth the substance of his in-chambers interview with Jonathan. The first assignment of error is overruled.
 II
Appellant argues that by allowing the guardian ad litem, who was not an attorney, to question witnesses during the hearing, the court allowed the unauthorized practice of law. The guardian ad litem was not engaging in the practice of law during the hearing. The guardian was not acting as an advocate representing any of the persons involved in the action, but rather was acting in her role as guardian to assist the court in determining the best interest of the child. Further, appellant has demonstrated no prejudice from the information elicited by the guardian. The guardian questioned two witnesses: appellant and appellee. None of the information elicited from questioning by the guardian ad litem was substantially different from the evidence before the court that was elicited through questioning by the attorneys. The second assignment of error is overruled.
 III
Appellant argues that the court erred in entering a temporary order of indefinite duration concerning designation of the residential parent. Specifically, the court argues that the court was not authorized to enter the second interim order, as Civ.R. 54 (E)(4)(c) explicitly prohibits the extension of an interim order after it has already expired. Temporary orders are merged within the final judgment. E.g., Colom v. Colom (1979), 58 Ohio St.2d 245,247. Therefore, at this point in the proceedings, appellant can only claim error in the final judgment concerning designation of appellee as the residential parent. Appellant also argues that the court erred in entering a temporary order of child support after referring the issue to the Child Support Enforcement Agency. Again, we will not review a temporary order of support pending final determination of the support issue. Further, while appellant claims the court should not have referred the issue to CSEA, the November 8, 1999 judgment entry refers the issue to CSEA after sustaining appellant's objection to the magistrate's decision concerning child support. Any claim of error concerning these issues should be raised at the time a final judgment of child support is issued. The third assignment of error is overruled. IV Appellant argues that the court erred in awarding fees to the guardian ad litem absent notice and a hearing. Juv. R. 4 (G) allows the court to fix compensation for the services of a guardian ad litem, and charge them to the parents as part of the costs. In the instant case, the court required each party to pay one half of the fee of the guardian as costs. In the report of the magistrate, the magistrate set forth a finding of fact concerning the hours and fees incurred by the guardian ad litem, and the magistrate's opinion that because neither the parties nor the child were residents of Licking County, the guardian was required to travel out of the county in order to conduct an investigation. After entry of the magistrate's decision, appellant objected only in a general way to this finding of fact, objecting to any fee in excess of $500. The record does not reflect that appellant requested a hearing on the issue of fees. Appellant has therefore waived any error. The fourth assignment of error is overruled. V Appellant argues that the court ignored evidence of physical violence committed by the appellee against Jonathan. It is apparent from the findings of the magistrate that the magistrate did consider appellant's testimony concerning violent tendencies on the part of appellee, but the magistrate simply did not believe her testimony. The magistrate specifically found that while there was evidence presented to show that Jonathan has expressed fear of his father, the magistrate felt that other evidence pointed out that Jonathan was a masterful manipulator. Finding of Fact 44. Based on the testimony of Tina Pennington, appellee's fiancé, the court concluded that appellee has a temper, which he manages in an appropriate manner. The trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. Myers v. Garson (1993), 66 Ohio St.3d 610,614. The fifth assignment of error is overruled.
The judgment of the Licking County Common Pleas Court, Domestic Relations Division, is affirmed.
By Gwin, P.J., and Milligan V.J., concur Hoffman, J., concurs in part; dissents in part.